IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| DON SORRELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:09cv710-MHT |
| | ) | (WO) |
| LAKE MARTIN, INC., and | ) | |
| TOM HAYLEY, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiff Don Sorrells filed this lawsuit claiming

that defendant Lake Martin, Inc. terminated his

employment in violation of the Americans with

Disabilities Act of 1990 (ADA), as amended, 42 U.S.C.

§§ 12101-12134 (2005 & 2010), and the Family and Medical

Leave Act (FMLA), 29 U.S.C. §§ 2601-2654 (2009 & 2010).

He further claims that Lake Martin and defendant Tom

Hayley, Lake Martin's owner and president, invaded his

privacy in violation of Alabama law.  Jurisdiction over

his federal claims is pursuant to 28 U.S.C. §§ 1331

(2006) (federal question) and 1343 (2006) (civil rights);

42 U.S.C. § 12117 (2005) (ADA); and 29 U.S.C. § 2617(a)(2) (2009) (FMLA). Supplemental jurisdiction over the state claim is under 28 U.S.C. § 1367 (2006).

This case is currently before the court on Lake Martin and Hayley's motion for summary judgment. The motion will be granted in part and denied in part.

## I. STANDARD FOR SUMMARY JUDGMENT

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

2

## II. BACKGROUND

Sorrells began working for Lake Martin, a convenience store company that sells fuel and other concessions, in August 2006.  Lake Martin had five locations during the term of Sorrells's employment and the company now has 13 locations.  Besides owning Lake Martin, Hayley also owns a Honey Baked Ham franchise and 23 other companies.  Lake Martin shares a common bookkeeper in Hayley's corporate office with the Honey Baked Ham franchise as well as another one of his companies, Tiger Communications.  In all, Hayley has more than 100 employees working for him.

From August 2006 until December 2007, Sorrells worked at various Lake Martin locations.  In December, he notified his manager about a serious health condition, the digestive disease Diverticulitis, and gave three-weeks notice of his plan to resign.  At the conclusion of the three weeks, however, his manager requested that he return to Lake Martin on a part-time basis.  Sorrells

agreed and provided written notice that his health required that he work part-time.

In March 2008, Sorrells's medical condition worsened and he required emergency surgery. A few weeks after returning to work from the surgery, Sorrells was removed from his Lake Martin store's weekly schedule and fired. Sorrells has presented evidence, unchallenged as to its admissibility, demonstrating that on multiple occasions Hayley told Lake Martin managers that Sorrells had acquired immune deficiency syndrome (AIDS) and that he should be taken off the work schedule. Sorrells does not have AIDS or the human immunodeficiency virus (HIV).

## III. DISCUSSION

### A. ADA

The ADA makes it illegal for a covered employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a) (2010). In order to prove an ADA employment-discrimination claim, Sorrells

must show that: (1) he has a disability; (2) he is a qualified individual, meaning that, with or without reasonable accommodations, he can perform the essential functions of the position in question; and (3) he was discriminated against because of his disability.  <u>Lucas v. W.W. Grainger</u>, 257 F.3d 1249, 1255 (11th Cir. 2001).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2) (2008).  In this case, Sorrells contends that he was disabled under subsection (C) of § 12102(2), and he has presented evidence from which one could conclude that Hayley regarded him as having AIDS.  According to two employees, Hayley instructed his managers to stop providing Sorrells with weekly hours at his stores because he thought Sorrells had AIDS.  "Under the 'regarded as' prong, a person is 'disabled' if her employer perceives her as

having an ADA-qualifying disability, even if there is no factual basis for that perception." Carruthers v. BSA Advertising, Inc., 357 F.3d 1213, 1216 (11th Cir. 2004) (citing Williams v. Motorola, Inc., 303 F.3d 1284, 1290 (11th Cir. 2002)). "As with actual impairments, however, the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual." Id. (citing 42 U.S.C. § 12102(2) (2008)).[1]

---

1.   42 U.S.C. § 12102 was recently amended by the ADA Amendments Act of 2008, with an effective date of January 1, 2009.  As amended, the "regarded as" definition of disabled may now be satisfied where the plaintiff "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (2010) (emphasis added). However, the courts have consistently held that the amendments are not retroactive.  See, e.g., Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 566-67 (6th Cir. 2009); Fikes v. Wal-Mart, Inc., 322 Fed. Appx. 882, 883 n.1 (11th Cir. 2009) (unpublished); see also Fernandez-Vargas v. Gonzalez, 548 U.S. 30, 37 (2006) ("[A] statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication.") (quotation omitted).  The events that gave rise to Sorells's ADA claim took place before the amendments went into effect.  Therefore, the court applies the prior version of the statute as well as the (continued...)

AIDS is a disability under the ADA because victims of the disease suffer "an impairment of a major life activity or activities." <u>Severino v. North Fort Myers Fire Control Dist.</u>, 935 F.2d 1179, 1182 n.4 (11th Cir. 1991); <u>see</u> <u>also</u> <u>Martinez By and Through Martinez v. School Bd. Of Hillsborough County, Florida</u>, 861 F.2d 1502, 1506 (11th Cir. 1988) (finding that AIDS is a condition that substantially limits one or more major life activities). Therefore, Sorrells has presented evidence from which a reasonable trier of fact could conclude that he had a disability under the ADA: one could conclude that he was regarded as having AIDS, a disease which, when actually present in an individual, may substantially limit major life activities.

Sorrells has also presented evidence from which a reasonable trier of fact could conclude that he was capable of performing the essential functions of the position in question. Therefore, the final question is

_____

    1. (...continued)
case law interpreting the prior version.

whether Sorrells has presented enough evidence showing that he was discriminated against because of his perceived disability.  As stated, Sorrells claims that Lake Martin discriminated against him by firing him because the company thought he had AIDS.  He has presented credible evidence to support this allegation. According to two employees, Hayley instructed his managers to stop providing Sorrells with weekly hours at his stores because he thought Sorrells had AIDS.  From the time Hayley allegedly issued his directive, Sorrells was no longer scheduled to work at the Lake Martin stores and was terminated from the company without explanation.

While Lake Martin contends either that Sorrells was not terminated or that he was terminated because he could not work full-time and would have been rehired had he contacted the correct managers, Sorrells's evidence contradicts these arguments.  Thus, from the evidence before the court, a reasonable trier of fact could conclude that Hayley (1) regarded Sorrells as having a

disability; (2) when Sorrells was a qualified individual, in that he was capable of performing the essential functions of the position in question; and (3) that Sorrells was discriminated against because of his "disability."  See Lucas, 257 F.3d at 1255.  Although Lake Martin may be able to rebut Sorrells's evidence at trial, a serious question of fact exists as to whether the company violated the ADA when it terminated Sorrells, and therefore, Lake Martin's motion for summary judgment will be denied as to the ADA claim.


**B. FMLA**

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions" of his position.  29 U.S.C. § 2612(a)(1)(D) (2009).  The statute also allows employees to work at a "reduced leave schedule" or a "schedule that reduces the

usual number of hours per workweek, or hours per workday" when "medically necessary." §§ 2611(9) & 2612(b)(1) (2009). The FMLA creates two types of claims: interference claims, in which employees assert that their employer denied or otherwise interfered with their substantive rights under the statute, § 2615(a)(1) (2009), and retaliation claims, in which employees assert that their employer discriminated or retaliated against them because they engaged in activity protected by the statute, § 2615(a)(2) (2009); see also Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).

Sorrells asserts both an interference claim and a retaliation claim under the FMLA against Lake Martin. In response, Lake Martin argues that, at the time Sorrells was employed by the company, it was not an "employer" under the FMLA, and, therefore, its leave policies were not governed by the statute. Lake Martin also reiterates that Sorrells was not terminated by the company.

10

**Employer under the FMLA**:  An "employer" is defined as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."  § 2611(4)(A)(i) (2009).  Lake Martin argues that it is not an "employer" because it did not have the requisite number of employees during the time Sorrells was employed by it.  Sorrells argues that, while Lake Martin may not have had enough employees for the entire 20 workweeks prior to his dismissal, the company is an "integrated employer" along with Tiger Communications and the Honey Baked Ham franchise owned by Hayley.  He has also presented evidence showing that, since 2006, Lake Martin's employee handbook has informed employees that they are entitled to take leave pursuant to the FMLA.

Whether Lake Martin is an "employer" under the FMLA is a question of fact.  See generally, Morrison v. Amway Corp., 323 F.3d 920, 927-28 (11th Cir. 2003) (whether a

person is an employee under the FMLA is a question of fact).   The Department of Labor states that various companies may constitute an individual's "integrated employer" where they have "(i) Common management; (ii) Interrelation between operations; (iii) Centralized control of labor relations; and (iv) [A] [d]egree of common ownership/financial control."   29 C.F.R. § 825.104(c)(2) (2009).

In this case, the evidence shows that Hayley is the owner of all three companies, and the companies share a common bookkeeper.   Further, a jury could find that Lake Martin views itself as an "employer" with the required number of employees under the FMLA, as evidenced by the fact that the company's employee handbook has, since 2006, informed employees that they are entitled to take FMLA leave.   Thus, Sorrells has presented evidence from which a reasonable trier of fact could conclude that Lake Martin is an "employer" under the FMLA.   The court will

now turn its attention to Sorrells's FMLA interference
and retaliation claims.

Interference: To state an interference claim under
the FMLA, Sorrells must prove that "(1) he availed
himself of a protected right under the FMLA; (2) he
suffered an adverse employment decision; and (3) there is
a causal connection between the protected activity and
the adverse employment decision." Parris v. Miami Herald
Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000)
(citation omitted). He "need not allege that his
employer intended to deny the benefit--'the employer's
motives are irrelevant.'" Hurlbert v. St. Mary's Health
Care System, Inc., 439 F.3d 1286, 1293 (11th Cir. 2006)
(quoting Strickland, 239 F.3d at 1208).

A question of fact exists as to whether Lake Martin
interfered with Sorrells's FMLA right to work a "reduced
leave schedule" following his emergency surgery. See 29
U.S.C. §§ 2611(9), 2612(b)(1) (2009). Sorrells has
presented evidence from which a jury could conclude that,

13

around December 2007, he availed himself of this protected right when he gave written notice of his medical need to work part time. He explained that, "due to a small health problem, [he] need[ed] to go from full time to part time for a while." Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 2 at 47 (Doc. No. 25-2). It was not necessary for this notice to expressly mention FMLA rights. 29 C.F.R. § 825.302(c) (2009) ("When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA."). In addition, Lake Martin has not challenged the notice's sufficiency. See also id. ("In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.").

A few weeks later, Sorrells suffered an adverse-employment decision when he was removed from his store's

14

schedule and terminated.  While Sorrells was not given an explanation for his termination, Lake Martin insists that Sorrells was removed from the schedule because he was a part-time employee.  Notwithstanding the fact that other employees charge that Hayley fired Sorrells for other reasons, as stated above, a reasonable trier of fact could conclude that Hayley's own stated reasons for terminating Sorrells's employment were in direct interference with his rights under the FMLA.  In short, a jury could conclude that Hayley did not want Sorrells working part-time, even though he was entitled to do so under the FMLA's "reduced leave schedule" right. 29 U.S.C. §§ 2611(9), 2612(b)(1) (2009).  Therefore, Lake Martin is not entitled to summary judgment on Sorrells's interference claim.

Retaliation: Sorrells also asserts that Lake Martin retaliated against him for availing himself of the right to work a "reduced leave schedule."  To establish an FMLA retaliation claim, Sorrells has the additional burden of

15

demonstrating that Lake Martin intentionally discriminated or retaliated against him, in the form of an adverse-employment action, for exercising an FMLA right.  See Strickland, 239 F.3d at 1207.  Therefore, he must show that Lake Martin's adverse-employment decision was motivated by "impermissible retaliatory or discriminatory animus."  Id. (quotation omitted).

Hayley allegedly decided to remove Sorrells from the schedule because "Don was sick all the time and he felt like Don had AIDS."  Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 11 (Doc. No. 25-11).  Sorrells has also presented evidence showing that he was willing to switch to full-time to keep his job but that Lake Martin's upper management would not return his calls.  A reasonable jury could find that Hayley was motivated to terminate Sorrells, and to make false statements about him, by a desire to retaliate against him for seeking to work part-time following his emergency surgery.  Therefore, summary judgment will be denied on the FMLA retaliation claim.

## C. Invasion of Privacy

Sorrells brings this state claim against both Lake Martin and Hayley, arguing that Hayley's statements to managers and employees of Lake Martin that Sorrells had AIDS represent actionable invasions of privacy under Alabama law.[2] "Alabama has long recognized the tort of invasion of privacy." <u>Johnston v. Fuller</u>, 706 So. 2d 700, 701 (Ala. 1997) (citing <u>Smith v. Doss</u>, 37 So. 2d 118 (Ala. 1948)). "It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality

_____

2. There is no dispute that Hayley's comments about Sorrells's alleged illness were made while he was acting as Lake Martin's agent.

17

for a commercial use." Id. (citing Norris v. Moskin Stores, Inc., 132 So. 2d 321 (Ala. 1961)). Sorrells claims that Lake Martin and Hayley invaded his privacy by committing the first two wrongs: (1) that they intruded into his physical solitude or seclusion; and (2) that they gave publicity to private information about him.

In Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala. 1983), the Alabama Supreme Court adopted the Restatement (Second) of Torts definition of the wrongful-intrusion branch of the invasion-of-privacy tort: "'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" Id. at 706 (quoting Restatement (Second) of Torts § 652B (1977)). An intrusion upon solitude or seclusion can arise out of remarks about private matters made to a third party. Logan v. Sears, Roebuck & Co.,

18

466 So. 2d 121, 123 (Ala. 1985).  An intrusion is highly offensive to a reasonable person if it is of such a nature as "to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Norris, 132 So. 2d at 323 (quotation omitted).

As stated, Sorrells has presented evidence which, accepted as true, demonstrates that Hayley told managers and employees of Lake Martin that Sorrells was diagnosed with AIDS and that he therefore should be taken off of the work schedule.  A reasonable jury could find that these statements gave rise to inferences that Sorrells was unable to perform his job and that he posed a risk to other employees.  Cf. Tolman v. Doe, 988 F. Supp. 582, 585-86 (E.D. Va. 1997) (Merhige, J.) (holding that letter from defendant physician to plaintiff physician's patients, informing them that plaintiff had AIDS, was defamatory per se because letter falsely implied that plaintiff put his patients at inappropriate risk and was unfit to perform his job, thereby prejudicing him in his

profession); <u>see</u> <u>also</u> <u>Ravnikar v. Bogojavlensky</u>, 782 N.E. 2d 508, 511-12 (Mass. 2003) (holding that plaintiff physician stated claim for defamation against colleague for false statement that plaintiff was dying of breast cancer because statement created an inference that could have prejudiced her medical practice); Restatement (Second) of Torts § 572 ("One who publishes a slander that imputes to another an existing venereal disease or other loathsome and communicable disease is subject to liability without proof of special harm"); <u>id</u>. at § 573 ("One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession ... is subject to liability without proof of special harm.").[3] For this reason, a reasonable jury could also conclude that

_____

3. To be clear, the issue here is that Hayley's statements could have raised false inferences about Sorrells's health and ability to work, and not about his sexual orientation.

Hayley's conduct caused Sorrells to experience mental suffering, shame, or humiliation.

The court appreciates Lake Martin and Hayley's argument that Sorrells himself opened up discussions about his personal and private health when, in December 2007, he notified his manager that he had a serious health problem and, in particular, the digestive disease Diverticulitis. However, an employee's statement that he has a health problem does not give an employer license to share with others any and all speculative and unfounded comments about the employee's private health if the speculative and unfounded comments are not in any way reasonably related to the health problem at issue and would subject the employee to mental suffering, shame, or humiliation.

With respect to the publicity branch of the invasion-of-privacy tort, Sorrells has not demonstrated that the defendants have given "publicity to private information about [him] that violates ordinary decency." Johnston,

706 So. 2d at 701 (emphasis added).  On the contrary, Sorrells has presented evidence showing that Hayley's statements about Sorrells being diagnosed with AIDS were false.  <u>See</u> <u>also</u> Restatement (Second) of Torts § 652B special note (1977) ("This Section provides for tort liability involving a judgment for damages for publicity given to true statements of fact.").  Sorrells has not cited any precedent to show that the publication of <u>false</u> information can give rise to an invasion-of-privacy tort predicated on the publicity of private information.

Therefore, summary judgment will be denied as to Sorrells's invasion-of-privacy claim to the extent that it is based on an intrusion into his physical solitude or seclusion, and granted to the extent that it is based on the publication of private information.

***

Accordingly, it is ORDERED as follows:

22

(1) Defendants Lake Martin, Inc. and Tom Hayley's motion for summary judgment (Doc. No. 20) is granted on plaintiff Don Sorrells's invasion-of-privacy claim against defendants Lake Martin, Inc. and Hayley to the extent that this claim is based on the publication of private information. Judgment is entered in favor of defendants Lake Martin, Inc. and Hayley and against plaintiff Sorrells to this extent.

(2) Said motion for summary judgment is denied on plaintiff Sorrells's ADA and FMLA claims against defendant Lake Martin, Inc. and his invasion-of-privacy claim against defendants Lake Martin, Inc. and Hayley to the extent that this claim is based on an intrusion into his physical solitude or seclusion.  These claims will go to trial.

DONE, this the 11th day of February, 2011.


　　　　　　　　　　　　　　　/s/ Myron H. Thompson
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE